UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| NICOLE SCHARA,<br>　　Plaintiff,<br><br>　　v.<br><br>TLIC WORLDWIDE, INC.,<br>　　Defendant. | C.A. No. 20-CV-423-JJM-PAS |

**ORDER**

Before the Court is Defendant TLIC Worldwide, Inc.'s ("TLIC") Motion for a New Trial on Damages or in the Alternative a Remittitur under Rule 59 of the Federal Rules of Civil Procedure ("Rule 59"). ECF No. 32. TLIC generally argues that the jury award "shock[s] the conscience" because it was not based on the evidence introduced at trial.[1] *Id.* at 2. Plaintiff Nicole Schara disagrees, arguing that she "provid[ed] detailed testimony regarding [] the consequences of Defendant's wrongful actions with regard to her financial losses, her subsequent jobs, her attempts at gainful employment commensurate with the position that she held at the Defendant corporation, and the continuing emotional havoc wrought upon her." ECF No. 36 at 5. Based on its considerations of each party's arguments and a thorough review of the record, the Court finds that the jury's award of damages was "supported by the evidence, reasonable inferences from that evidence, and the jury's common sense, as

---

[1] Throughout its motion, TLIC curiously continues to cite to federal statutory requirements. *See generally* ECF No. 32. However, because no federal-law claims remain in the case, the Court need not address these numerous arguments.

opposed to speculation or conjecture." *Rodríguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14, 22 (1st Cir. 2022) (citations omitted). Accordingly, the Court DENIES TLIC's Motion for a New Trial or Remittitur. ECF No. 32.

## I. BACKGROUND

Nicole Schara was employed as an Inside Sales Account Manager by TLIC for a little over three years when TLIC fired her. Trial Tr. Day 1; Trial Tr. Day 2. Ms. Schara alleged that TLIC fired her because of her sex and as retaliation for reporting sexual harassment. ECF No. 1. After a three-day trial, a jury returned a verdict for Ms. Schara against TLIC on state-law claims[2] for hostile work environment, retaliation, whistleblower protection violation, and negligent training and supervision. ECF No. 29. Specifically, Ms. Schara alleged violations of the Rhode Island Civil Rights Act ("RICRA"); Rhode Island Fair Employment Practices Act ("FEPA"); Rhode Island Whistleblowers' Protection Act ("WBPA"); and common law negligence. ECF No. 1 at 9-15, 17-19. The jury returned a verdict for Ms. Schara and awarded her total damages of $491,500: back pay of $237,500; future pay of $94,000;

---

[2] The Court granted Defendant's Motion for Judgment as a Matter of Law as to the federal Title VII claims and took supplemental jurisdiction over the remaining state-law claims. *See, e.g., Carrasquillo-Serrano v. Mun. of Canovanas*, 991 F.3d 32, 45 (1st Cir. 2021) (alteration in original) (internal quotation marks omitted) (citations omitted) (noting that, under federal-question jurisdiction, "even [t]he termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion"). Given that Plaintiff had already put on her case-in-chief when the Court dismissed her federal claims, it would not have been in the interest of the judicial economy to subsequently retry part of the case and unfair to the parties to effectively declare this attempt a "practice run."

2

emotional damages of $60,000; and punitive damages of $100,000. ECF No. 29 at 1-2.

## II. STANDARD OF REVIEW

Rule 59 provides that "[t]he [C]ourt may, on motion, grant a new trial on all or some of the issues—and to any party— * * * for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. "A district court may grant a new trial 'only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice.'" *Burnett v. Ocean Props., Ltd.*, 987 F.3d 57, 72 (1st Cir. 2021) (internal quotation marks omitted) (citing, *inter alia*, *Sánchez v. Foley*, 972 F.3d 1, 16 (1st Cir. 2020)). The Court reviews the evidence in the light most favorable to the verdict winner. *Newell P.R., Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 18 (1st Cir. 1994) (citation omitted). A court may remit a jury's damage award only if it "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it." *Casco, Inc. v. John Deere Construction and Forestry Co.*, 990 F.3d 1, 13 (1st Cir. 2021) (internal quotation marks omitted) (quoting *Trainor v. HEI Hosp., LLC*, 699 F.3d 19, 29 (1st Cir. 2012)).

Under Rhode Island Law, "[w]hen ruling on a motion for a new trial [in a civil case tried to a jury], the trial [judge] acts as a 'superjuror' and 'should review the evidence and exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witnesses.'" *Hough v. McKiernan*, 101 A.3d 853, 856 (R.I. 2014) (internal quotation marks omitted) (citations omitted). The

Rhode Island Supreme Court has held that "[t]he trial [judge] need not engage in an exhaustive review and analysis of the evidence and testimony presented at trial * * * [but] need only make reference to such facts disclosed by the testimony as have motivated his or her conclusion." *Id.* (cleaned up). "A trial [judge] may set aside a verdict 'when [her] judgment tells [her] that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence.'" *Id.* (cleaned up). "In the alternative, a remittitur may be accomplished if the trial [judge] concludes, after passing upon the evidence, that the plaintiff is not entitled to such an award or that the award is unreasonable in light of the evidence presented at trial." *Id.* (internal quotation marks omitted) (citations omitted).

## III. DISCUSSION

TLIC essentially makes two core arguments in support of its motion. *See* ECF No. 32 at 1-2, 5-9. First, TLIC argues that Ms. Schara failed to make a good faith effort to mitigate her damages through alternative employment. *Id.* at 6-7. Second, TLIC argues that the jury award was excessive and lacked any reasonable evidentiary basis given the evidence that the parties presented at trial. *Id.* at 1-2.

### A. Failure to Mitigate

TLIC claims that there was no evidence that Ms. Schara tried to mitigate her damages as required under Title VII of the Civil Rights Act of 1964. *Id.* at 6-7. This argument fails for two reasons. First, the Court granted TLIC judgment as a matter of law on all Title VII claims before the jury deliberated. Therefore, Title VII's duty

4

to mitigate is irrelevant to the jury's award. Second, even considering a duty to mitigate under state law,[3] Ms. Schara did testify that she tried to find alternative employment. *See* Trial Tr. Day 2 (reflecting Ms. Schara's testimony about applying to jobs after her termination from TLIC). And although it was brief, Ms. Schara did actually obtain employment after her termination from TLIC. *See id.* Moreover, Ms. Schara specifically testified to the difficulty that she experienced during her job search given the circumstance under which she left her previous employment at TLIC. *See, e.g., id.* (explaining that an interview went well until she had to explain her termination from TLIC). The Court thus finds that the evidence reasonably reflects that Ms. Schara discharged any duty to mitigate.

### B. Evidentiary Basis and Reasonableness of Damages

With respect to the reasonableness of the award, TLIC argues that there were several specific deficiencies. ECF No. 32 at 5-6. First, TLIC argues that the awards of back pay and front pay were excessive and not based on the evidence that the parties presented at trial. *Id.* at 1-2, 5-6. TLIC also specifically contends that Ms. Schara needed to introduce further evidence, such as life tables, to establish future earnings more concretely. *Id.* at 6. Second, TLIC argues that Ms. Schara did not

---

[3] Unlike Title VII, the state statutes here do not explicitly require that a Plaintiff mitigate her damages. *See* R.I. Gen. Laws §§ 28-5-7, 28-50-4, 42-112-2. Although, under Rhode Island law, a trial judge might consider mitigation efforts in deciding whether to reduce an award of damages. *See, e.g., Shoucair v. Brown Univ.,* 917 A.2d 418, 436 (R.I. 2007) (holding that the trial court did not abuse its discretion when it reduced a front pay award under FEPA—one of the statutes here—because the Plaintiff failed to search for positions outside of academia after failing to obtain one in academia).

5

introduce any medical evidence of treatment for emotional suffering that she claims to have endured. *Id.* at 1-2, 7-9. Third, TLIC argues that the punitive damages were not reasonable given the evidence that the parties presented at trial. *Id.*

The Court instructed the jury that their award had to be based on a preponderance of the evidence and that they could not speculate; that any award had to be fair, adequate, and just; and that the specific amount was solely up to the jury. Jury Instructions at 15-16. There were no relevant objections to the jury instructions on this issue. The Court's instructions on damages were as follows:

> Damages are defined in law as that amount of money which will compensate an injured party for the harm or loss that she has sustained. The rationale behind compensatory damages is to restore a person to the position that she was in prior to the harm or loss. Compensatory damages, then, are the amount of money that will replace as near as possible the loss or harm caused to Ms. Schara.
> You may not speculate in awarding damages. If you find in Ms. Schara's favor, then you should consider awarding her such a sum as you find by the preponderance of the evidence will fairly and justly compensate her for any damages you find she sustained as a direct result of TLIC Worldwide's conduct. You may consider the value of her back pay, including benefits and bonuses, which she would have received from the date of her termination on February 9, 2018, until the present date. You may also consider future wages, also called front pay, that Ms. Schara would have earned if she had remained in the employ of TLIC Worldwide.
> You must also reduce any award to its present value by considering the interest that Ms. Schara could earn on the amount of the award if she made a relatively risk-free investment. The reason you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to Ms. Schara if she receives it today than if it were received at the time in the future when it would have been earned. It is more valuable because Ms. Schara can earn interest on it for the period of time between the date of the award and the date she would have earned the money. Thus, you should decrease the amount of any award for loss of future earnings by the amount of interest that Ms. Schara can earn on that amount in the future.

6

>           You may also award Ms. Schara emotional damages for any pain
>     and suffering she experienced as a result of TLIC Worldwide's conduct.
>     Distress arising from this lawsuit, or legal expenses incurred in this
>     lawsuit must not be included in these damages. Any amount you award
>     for emotional damages should be based upon your consideration of the
>     nature, extent, and duration of her pain and suffering. You may
>     compensate Ms. Schara for mental suffering, which may include
>     nervousness, anxiety, worry, shock, humiliation, embarrassment, or
>     indignity. It is difficult to measure emotional damages in terms of
>     money. Nevertheless, you may not speculate or guess as to what
>     constitutes fair compensation for pain and suffering.
>           Any award you determine must be based on the evidence and
>     what in your considered judgment constitutes fair, adequate, and just
>     compensation for such injuries and pain and suffering as have been
>     proved. The determination of that amount, if any, is solely for you, the
>     jury, to make.

Jury Instructions at 15-16. Against this legal backdrop, the Court assesses each of TLIC's arguments.

### 1. Back Pay and Front Pay

Ignoring its irrelevant arguments that rely on Title VII, TLIC does not otherwise seriously challenge the jury's award of back pay. The jury awarded Ms. Schara $237,500 in back pay. ECF No. 29 at 2. Ms. Schara testified that she was terminated from TLIC on February 9, 2018. Trial Tr. Day 2. The jury rendered its verdict on Wednesday November 2, 2022. ECF No. 29 at 3. Accordingly, the jury could have properly awarded Ms. Schara back pay for just shy of four years and nine months. *See* Jury Instructions at 15 ("You may consider the value of her back pay, including benefits and bonuses, which she would have received from the date of her termination on February 9, 2018, until the present date."). Multiplying her yearly salary (of roughly $40,000) by that time (roughly four years and nine months) yields approximately $190,000 in back pay. However, this calculation does not factor in

7

interest, salary increases, and so forth—all of which the jury reasonably could have factored in at some minimal amount. To be sure, had the jury's award been on the order of ten years' worth of salary (or some other facially unreasonable amount), the Court might be obligated to entertain a remittitur. But such exorbitant numbers are not present here. And it is not the Court's role to nitpick the jury's decision. Accordingly, because this back pay award does not "shock the conscience," the Court declines to disturb the jury's verdict. *Contra* ECF No. 32 at 2.

Although front pay is an equitable remedy that is within the Court's discretion, it considers the jury's award as advisory in crafting this remedy. *See Shoucair*, 917 A.2d at 436 (alteration in original) (internal quotation marks omitted) (citation omitted) ("[a]wards of front pay * * * are generally entrusted to the [trial judge's] discretion and are available in a more limited set of circumstances than back pay."). The jury could have properly awarded Ms. Schara front pay starting from November 2, 2022. *See* ECF No. 29 at 3 (noting the date of the jury award). The jury awarded front pay in the amount of $94,000. *Id.* at 2. Contrary to TLIC's contention, Plaintiff is not required to introduce life tables or other such information to establish an award of front pay. *See, e.g., Franchina v. City of Providence*, 881 F.3d 32, 58 (1st Cir. 2018) (citation omitted) (rejecting Defendant's argument that the Plaintiff was required to introduce "essential data"—meaning, "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount

rate"—to prove an award of front pay). (internal quotation marks omitted).[4] Although, Plaintiff must proffer some form of evidence to establish the reasonableness of a front pay award. *See id.* (noting that "a district court can consider an array of issues" when assessing whether Plaintiff has carried her burden in proving front pay).

The front pay award of $94,000 represents almost two-and-a-half times Ms. Schara's yearly salary from 2018 (excluding any future value discounting). Given that Ms. Schara introduced evidence of her strong work performance, the jury could have reasonably concluded that she would have worked at TLIC for at least two to three more years had she not been unlawfully terminated. *See, e.g.*, Trial Tr. Day 2 (noting, among other examples, that, based on her strong sales performance, Steven Palange, TLIC's president, wanted Ms. Schara to train him); *see also* ECF No. 32 at 6 (conceding that "[P]laintiff is a skilled sales expert"). Even discounting any future wages to their present value (again reasonably assuming some sort of minimal interest rate), $94,000 is a reasonable—and potentially even conservative—award of front pay. To be sure, had the jury awarded front pay on the order of five years' worth of salary (or some other facially unreasonable amount), Ms. Schara might have needed to introduce additional evidence to justify the likelihood of her continuing to work that far into the future. Additionally, had Ms. Schara earned a significant

---

[4] Although the cited case involved a Title VII claim, Rhode Island law generally mirrors federal law with respect to issues like damages that are available under civil rights statutes. *See, e.g., Lima v. City of East Providence*, 17 F.4th 202, 207 (1st Cir. 2021) (citing various cases to note that RICRA—one of the statutes here—often follows the same framework as its federal cognate of Title VII).

portion of her previous salary in subsequent jobs that she held after her termination from TLIC, then an offset of the front pay award might be appropriate. But given that those subsequent jobs were few and did not last long, this consideration is of little concern. *See* Trial Tr. Day 2 (explaining her subsequent work history). Accordingly, the Court finds that the evidence here is sufficient to justify this front pay award. The Court thus adopts the verdict amount of $94,000 as an appropriate award of front pay.

### 2. Medical Evidence of Emotional Distress

TLIC next argues that "[t]here are no medical reports, bills[,] or expert testimony in support of damages claimed towards the emotional distress." ECF No. 32 at 9. It further contends that there was no "competent evidence of 'genuine injury.'" *Id.* (citing *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999)). However, for two of the statutes here—FEPA and WBPA—the Rhode Island Supreme Court has explicitly held that medical evidence is not required to establish emotional distress damages.[5] *Shoucair*, 917 A.2d at 433 (addressing FEPA); *Adams v. Uno Rests., Inc.*, 794 A.2d 489, 493-94 (R.I. 2002) (addressing WBPA). And Ms. Schara testified at great length about the harm that TLIC's conduct caused her, which included an array of physical symptoms. *See, e.g.*, Trial Tr. Day 2 (detailing extensive mental distress and resulting physical symptoms, which required multiple

---

[5] TLIC's assertion, however, does appear to apply to a Plaintiff who alleges the tort of intentional infliction of emotional distress (which seems to be the source of some confusion). *See, e.g., Wright v. Zielinski*, 824 A.2d 494, 499 (R.I. 2003); *Vallinoto v. DiSandro*, 688 A.2d 830, 838-39 (R.I. 1997). But Ms. Schara never even alleged that tort. *See* ECF No. 1.

10

hospitalizations). She further testified that these medical conditions interfered with her ability to hold subsequent jobs after her termination from TLIC. *See* Trial Tr. Day 2. Accordingly, emotional damages are, legally, properly predicated on the state statutes here and are, factually, properly predicated on the ample evidence in the record.

### 3. Reasonableness of Punitive Damages

TLIC further argues that "the punitive damages are far beyond what would be expected in this matter based on the evidence in front of the jury."[6] ECF No. 32 at 9. The United States Supreme Court has provided three factors that a court should consider when assessing whether an award of punitive damages is excessive (and thus violative of due process). *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). A court must consider: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Mendez-Matos v. Mun. of Guaynabo*, 557 F.3d 36, 52 (2009) (citing, *inter alia*, *id.* at 575). The reprehensibility of the Defendant's misconduct is the most important consideration in assessing punitive damages. *Id.* at 52-53 (citing, *inter alia*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

---

[6] TLIC never explicitly articulates its objection to the award of punitive damages. *See* ECF No. 32 at 7-9. The Court thus reviews the award of punitive damages under the general standards of whether they comport with federal constitutional due process and overarching goals of Rhode Island law.

11

Here, Ms. Schara presented ample evidence of harassment that she suffered at the hands of TLIC employees. *See, e.g.*, Trial Tr. Day 1 (detailing instances of this dynamic). Ms. Schara also testified that this misconduct resulted in serious physical and emotional harm. *See, e.g.*, Trial Tr. Day 2 (elaborating on the grave extent of the harm). Given that "[a] punitive award many times the size of the compensatory award may be 'reasonable and proportionate' in certain circumstances," the serious nature of TLIC's misconduct and the fact that the punitive award represented less than a quarter of the total damages justify the punitive damages here. *Mendez-Matos*, 557 F.3d at 54. Finally, unlike Title VII, the state statutes here do not provide caps on the punitive damages that a jury can award. *See* R.I. Gen. Laws §§ 28-5-29.1, 42-112-2. And the Rhode Island Supreme Court has upheld jury awards for punitive damages of six-figures in cases involving arguably less egregious conduct. *See, e.g.*, *Cady v. IMC Mortg. Co.*, 862 A.2d 202, 219-20 (upholding a punitive damages award of $100,000 against an individual defendant who unlawfully terminated the plaintiff employee).

Additionally, "[t]he standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I. 1993). However, given the outrageous nature of the misconduct that witnesses described at trial (and as evidenced by the Court's prior references to the record), this case clears the high standard for awarding punitive damages under Rhode Island law. Accordingly, the

Court finds that the award of punitive damages was not excessive and was reasonably related to the evidence that is in the record.

## IV. CONCLUSION

There is no reason in law or fact for this Court to otherwise disturb this jury's sound and reasonable award for the Ms. Schara. The Court DENIES TLIC's Motion for a New Trial or Remittitur. ECF No. 32.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

February 13, 2023